IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**MARTHA CARRASCAL**,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　)
v.　　　　　　　　　　　　　　　) Civil No. 1:22cv825 (LMB/JFA)
**AMERICAN AIRLINES, INC.**,　　)
　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　)

## <u>AMENDED COMPLAINT AND JURY DEMAND</u>

COMES NOW your Plaintiff, MARTHA CARRASCAL, by counsel, and for her

Amended Complaint against the Defendant, AMERICAN AIRLINES, INC., and as

grounds therefore respectfully represents as follows.

<u>Nature of the Case</u>

1.　　　　This is an action for money damages arising out of an employment

relationship, brought by Plaintiff Martha Carrascal,  under 42 U.S.C. § 1981, against

Carrascal's former employer, American Airlines, Inc., for disparate treatment,

harassment, disparate discipline, and retaliatory discharge, based upon her race, Hispanic.

<u>Parties, Jurisdiction and Venue</u>

2.　　　　At the relevant times referenced herein, your Plaintiff, whose full name is

Martha Magally Alvarez Carrascal, was and is an adult resident of sound mind of

Virginia, and at all times referenced herein, was and is citizen of the United States of

America; Plaintiff currently lives in Fairfax, Virginia.  At all times referenced herein,

your Plaintiff was and is a Peruvian-born individual, of Hispanic race, with Amerindian

racial features, and, relatively speaking, of diminutive and demure stature, manner and

bearing.

3.     Upon information and belief, at all material times referenced herein, defendant AMERICAN AIRLINES, INC., (hereinafter, "American Airlines" or "Defendant") was and is a publicly traded Delaware Stock Corporation, duly authorized to transact business in the Commonwealth of Virginia, and in fact transacting substantial business in the Commonwealth of Virginia, and Arlington County, as well as in interstate commerce, at various commercial locations, including, out Ronald Reagan National Airport, in Arlington County, Virginia, as described below.

4.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as this case arises under a federal statute, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991; and venue is further proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as upon information and belief, all acts referenced herein took place in and around Arlington County, Virginia, and upon information and belief, a substantial portion, if not all, of the decisions related to the allegations herein occurred in, and/or related to, Plaintiff's employment by, Defendant, were made in and around Arlington County, Virginia.   The claims raised herein arise under federal statutory law; pursuant to which this court has original subject matter jurisdiction for the claims brought herein.

<u>Operative Facts</u>

5.     On or about March 14, 2016, your Plaintiff became employed by Defendant American Airlines, as a Customer Assistance Representative, for primary tasking at the American Airlines facilities located at Reagan National Airport (DCA), with a whole host of duties, including, but not limited to, furnishing and ensuring smooth arrival and departure processes for customers, greeting customers, checking in customers, resolving customer issues and airline inquiries, and also making special provisions for

military persons and family members of such persons, all at Ronald Reagan National Airport, located in Arlington, Virginia.

6.     During Plaintiff's employment for Defendant, since 2016, Plaintiff had a good work record, and was well-liked by both coworkers and management alike, resulting in her continued employment, as well as several raises, and positive performance assessments.

7.     In the one year immediately preceding Plaintiff's termination from Defendant's employ, she was employed by Defendant on a full-time basis, at an average nominal hourly rate, exclusive of other benefits of employment, including, but not limited to, health insurance, 401(k) savings, and employee travel pass privileges, of $18.50 per hour.

8.     At all times referenced herein, and to this date, Plaintiff was and is qualified and licensed for the position and role she held with Defendant, and Plaintiff satisfied the skill, experience and other job-related requirements for the position held by her.

9.     On or about late 2018 to early 2019, Defendant hired into, and/or transferred to, National Airport, one Adrienne Joseph-Hawkins, who is believed to be an American-born African American (black), as a Manager with supervisory and other authority over your Plaintiff.

10.     From the very inception of Ms. Adrienne Joseph-Hawkins's tasking at Reagan National, she appeared to take a visible dislike to everything about your Plaintiff, including her appearance, and height, looking at Carrascal very skeptically, and with bodily language and facial expressions showing a visible and palpable dislike of your

3

Plaintiff, before Carrascal had ever done or said anything, in the presence of Ms. Adrienne Joseph-Hawkins, or otherwise made known to her, otherwise looking at your Plaintiff very strangely, or over Carrascal's head, and making Carrascal feel uncomfortable.

11.     Manager Adrienne Joseph-Hawkins further expressed and exhibited her dislike, not only for Carrascal's physical appearance and bearing, but also her accented English, virtually ignoring, dismissing, or not reacting to anything Carrascal had to say, or directly addressing Carrascal as to any issue, item or question regarding the work, and seemingly looking through her, or looking at a space above and beyond Carrascal's head, while talking to Carrascal, with such derisive body language not being directed at any of Carrascal's non-Hispanic coworkers.

12.     On several different occasions, and even when there was no factual or practical basis to do so, and as a result of Carrascal's relatively thick Spanish-speaking accent, Manager Adrienne Joseph-Hawkins seemingly went out of her way to admonish or chide Carrascal, in a loud and booming voice, for things Carrascal was supposedly doing wrong, and  Joseph-Hawkins made sure to do so in front of customers; but Adrienne Joseph-Hawkins did not do this with any of plaintiff's non-Hispanic coworkers, if she counseled any of them *at all* on the same or similar items, which was rare to non-existent.  If Adrienne Joseph-Hawkins saw fit to counsel of speak to Carrascal's non-Hispanic coworkers, those conversations and communications almost invariably occurred behind closed doors in a back office or room somewhere.

13.     When, as a matter of professionalism, as well as non-harassment, Carrascal expressed a preference that Adrienne Joseph-Hawkins please address such

issues in a back office, and that raising of Adrienne's voice volume would not improve Carrascal's understanding of what Adrienne Joseph-Hawkins was saying, Adrienne Joseph-Hawkins stated to Carrascal that Carrascal was not allowed to be with her in the back office, for any purpose, even though Adrienne Joseph-Hawkins did not do the same thing with Carrascal's non-Latina coworkers.  This not only caused needless embarrassment to Carrascal, but was also unprofessional.

14.     When Carrascal confided in a coworker that Adrienne Joseph-Hawkins was singling Carrascal out, and going out of her way to raise her voice, chide, and embarrass Carrascal in front of coworkers and customers alike, the coworker, another Latina Customer Service Agent, who had a substantial amount of experience dealing with Adrienne Joseph-Hawkins, and watching Adrienne Joseph-Hawkins, said [referring to Adrienne Joseph-Hawkins]:  "She doesn't like Latinas."

15.     Shortly after the appearance of Adrienne Joseph-Hawkins, as a Manager at DCA, in the Spring of 2019, upon information and belief, Defendant hired one Valeria Xavier, who upon information and belief, is a Brazilian-born African American (black) individual who identifies as a female, and/or is in the process of becoming biologically female, to act as a fellow Customer Service Representative.

16.     From the very inception of Xavier's appearance at the work site, and on a continuing basis, seeming controversy and problem situations seemed to follow Xavier around, at Xavier's apparent instigation or initiation; for example (i) Xavier made repeated accusations to Carrascal and others, seemingly trying to provoke some sort of confrontation, that each was "talking about me" [even grabbing Carrascal by the jacket while doing so, placing Carrascal in imminent fear of bodily harm, while making this

allegation]; (ii) unprofessionally and publicly, in front of customers, insulting Carrascal, calling Carrascal "stupid" and "idiot"; (iii) fighting and arguing with customers and coworkers alike, on a repeated basis, often to the point that certain customer matters had to be taken up by a different Customer Service Representative.

17.     After these types of events became repeated,  Plaintiff reported them to Krystele Louis, a Manager, and Patricia Manning, a Customer Service Supervisor [both of whom are believed to also be black persons] wondering why this type of disruption and misbehavior was being tolerated by management, and asking that they please do something about this, referring to Xavier; both stated to Plaintiff:  "she's very special; I can't tell you anything, but be careful," or words to that effect.   Were it not for the fact that Carrascal was and is a Latina or Hispanic person, management would have acted on such a complaint, but because of Carrascal's Hispanic race, and attendant accented English, her complaint seemingly fell on deaf ears, and not even an investigation, much less any disciplinary action, ensued.

18.     On or about August 3, 2019, Plaintiff was called into a hastily arranged meeting with Hayden Nedd, a black Customer Service Manager for DCA, and Adrienne Joseph-Hawkins, the said Manager over Carrascal [as above, also black], and was informed that Carrascal was being "withheld from service," or immediate suspended without pay [but also having her travel pass privileges suspended then and there], due to an "investigation regarding possible violation of the Standards of Attendance and Performance Guidelines for Customer Care," and in particular, the Company's Work Environment Policy, which, upon information and belief, prohibits behavior that is threatening, intimidating, interfering with, or abusive, demeaning, or violent behavior

toward, another team member, contractor, customer or vendor, while either off or on duty.

19.     No further alleged particulars were provided with this notice, but Nedd and Adrienne Joseph-Hawkins told Carrascal that the investigation surrounded Carrascal supposedly spreading a rumor, and/or [again] talking about Xavier, to the effect that "she's [Xavier] a man," and that said coworker, Xavier, who had previously treated Carrascal in such a hostile and shabby fashion, as well as assaulted Carrascal, with no apparent consequence of any kind, [despite Carrascal's complaint regarding the same], had lodged some sort of Complaint of her *own*, with American Airlines, to the effect that *Carrascal* was spreading rumors that "Xavier is a man."

20.     Nedd also stated that the said Adrienne Joseph-Hawkins, the Manager, would be involved in any further investigation of this allegation, and that she was backing Xavier in advancing this Complaint.  Hearing this, Carrascal told Nedd that Carrascal had overheard several of her coworkers who *actually* were involved in discussions about Xavier being a man, but that Carrascal neither started, nor perpetuated those statements or discussions, as in Carrascal's view [which she also told to Nedd], she did not want to get into others' personal business, and doing that type of thing was inconsistent with running a professional workplace, and was peoples' own personal business.

21.     In this same conversation, Carrascal asked Nedd why other employees who had been involved in *actually* discussing such things had not been suspended, or disciplined, at all, and the reply she received was "unfortunately, she picked only your name," or words to that effect, but not denying that this had taken place.

22.     Nedd otherwise made no substantive reply to Carrascal's offer to provide these names,  falsely saying it was "too late" for Carrascal to describe the employees she overheard talking about such things; as such, no alleged witness statements or accounts were otherwise provided to Carrascal, and neither Nedd nor Adrienne Joseph-Hawkins solicited any information or version of anything, from Carrascal.

23.     A day or two later, Hayden Nedd called Carrascal in the evening, and called Carrascal to DCA in the evening, to read the accusations, and seemed to be doing a lot of typing, even though he did not solicit any factual accounts from Carrascal, also admonishing Carrascal not to try to record this, with her phone.

24.     Upon information and belief, a different American Airlines Supervisor, Patricia Manning, told Nedd and/or Adrienne Joseph-Hawkins that Carrascal did not start and/or perpetuate any rumor or discussion about Xavier "being a man," and Nedd and Adrienne Joseph-Hawkins ignored and/or disregarded this information or fact.  Upon information and belief, Defendant failed to take any statement from, or otherwise arbitrarily disregarded, this apparent account from Manning.

25.     A few days into this suspension, Carrascal had a conversation with Ms. Odra, a black management employee from the Dominican Republic, who functioned in the back administrative offices of American at DCA during that period, complaining of the unfairness of this suspension, and the lack of investigation and taking account of the actual facts, and the immediate rush to suspension of Carrascal, as had occurred.

26.     By way of background to this conversation, and known to Odra, previously, during Carrascal's employment at DCA, a black customer service representative named Kadijah, who also worked at the gates, had been suspended by

8

American, but was permitted by American to return to work after two months, as a result of her taking a customer's credit card, and going off into the concourse shops at DCA, and charging electronic items, as well as food items, on the customer's credit card, causing a big customer complaint and scandal.  Upon information and belief, black members of management at DCA, including one or more of Turpin, Adrienne Joseph-Hawkins and/or Hayden Nedd, made some sort of deal with the said customer, to keep the customer from pressing charges, or filing a criminal complaint, after which Kadijah was brought back to work after about two months.

27.     Against this factual history and backdrop, Carrascal complaint to Odra of the unfairness of her being immediately suspended with no investigation, whereas a person who had stolen from a customer had been brought back, in response to which Odra stated:  "I know it seems unfair, but she is an African American, and you are not."

28.     Around of a week after the beginning of Carrascal's suspension, and after the latest telephonic interchange with Adrienne Joseph-Hawkins, Carrascal had a conversation about her suspension with a different Supervisor at National Airport, Wanna Cocker[also a black individual], who confided to Carrascal:  "I know Adrienne Joseph-Hawkins doesn't like you; I know she harassed you; you ought to call the American Airlines HR/Discrimination hotline about this."

29.     At this, Carrascal found a 1-800 number for the American Airlines discrimination hotline, and complained about the fact that Manager Adrienne Joseph-Hawkins was going out of her way to look for reasons to admonish Carrascal, in front of customers, and had seen to her suspension, as well as the dismissive behavior she was receiving from Adrienne Joseph-Hawkins, also referencing the "investigation" in which

Adrienne Joseph-Hawkins purported to involve herself, also referencing the fact that others had told Carrascal that Manager Adrienne Joseph-Hawkins, who was involved in this investigation, did not like Latinos.  The person answering the discrimination hotline for American stated that someone from HR [human resources] would contact Carrascal in follow-up.

30.     Approximately three days later, a person from American Airlines Human Resources, believed to be one Franklin Rivers, contacted Carrascal by telephone, asking about Carrascal's interactions and relations with the Manager, Adrienne Joseph-Hawkins. Carrascal told Rivers how rude and dismissive Adrienne Joseph-Hawkins had been to Carrascal, and how she had been singled out by Manager Adrienne Joseph-Hawkins, as the only one to be suspended for allegedly starting rumors, as well as chided in front of customers, and Carrascal taking exception to Adrienne Joseph-Hawkins's consistent disdain for, and mistreatment of Carrascal, asking "What's wrong? I'm working very hard."  Rivers stated that, being new in HR, there was little Rivers could do personally, but that Rivers would follow up with personnel at Reagan National (DCA), who might be able to do something about this state of affairs.

31.     On or about August 16, 2019, Carrascal sent to Marvin Turpin an e-mail, another black manager at DCA, naming four different co-workers who she had overheard making comments about the new employee being a man; Turpin did not reply to this e-mail, but called Carrascal later that day, saying he was "returning your call" [Plaintiff had not called him, but had sent the referenced e-mail].  Carrascal otherwise received no reply from Turpin, as to the content of this e-mail, although Turpin acknowledged receiving the names of employees who had been involved in, or knew also about, those discussions,

overheard by Carrascal.

32.     On August 20, 2019, Carrascal forwarded to Radney Robertson, another General Manager, the same e-mail text, previously sent to Turpin, containing the names of employees actually involved in discussions about Xavier, and the same information Carrascal also forwarded to Franklin Rivers, in Human Resources of American Airlines, on August 26, 2019.

33.     Several days after making the first above-referenced complaint to the American Airlines discrimination hotline, the same Supervisor at Reagan National, Wanna Cocker, again urged Carrascal to contact the HR Discrimination hotline, whereupon Carrascal again did so, and spoke with someone in HR at American, who said that the Complaint had been reported to American Airlines personnel at Reagan National Airport, and was "under investigation."

34.     Upon information and belief, none of  Carrascal's non-Latina coworkers were subject to any of the things he was subjected to, inclusive of: being berated in front of customers, not having one's complaint of mistreatment by a coworker investigated and addressed, being disbelieved in investigation, being ignored and mistreated by the Manager, and told the employee could not come to the manager's office to discuss things, as well as being suspended and irretrievably terminated for alleged misbehaviors on the job, and falsely accused of instigating or starting said rumors, and being fired based upon the same allegations.

35.     In fact, during Carrascal's employment with American, she had a good work record, and much more proven record of professionalism, reliability and credibility, than Xavier had ever developed, over a much longer period of employment of Carrascal

with American Airlines; without practical reason or effect,  not just Adrienne Joseph-Hawkins, but Turpin and Hayden Nedd, another black manager at DCA, illogically and arbitrarily elevated Xavier's apparent word was placed above that of Carrascal; in actuality, Carrascal was a dedicated, if not exemplary, employee, of a much more reliable and credible nature, than Xavier, a fact known to each of Nedd, Turpin and Adrienne Joseph-Hawkins.

36.     Carrascal requested to see what witness statements supported the proposition that she had made such comments, and had also been the only one who had been involved in, or overheard, discussions regarding Xavier allegedly "being a man"; Adrienne Joseph-Hawkins, Nedd and Turpin all failed and refused to provide this information to Carrascal.

37.     A few days prior to September 4, 2019, Patricia Manning, a Union representative, and Wanna Cocker, a Supervisor, called Carrascal to set up a conference call for a meeting with Marvin Turpin, the Second Level Manager, and Hayden Nedd, the Customer Service manager.  In this call, Wanna Cocker told Carrascal:  "Plead guilty" and "Apologize, and it will be easy to resolve the issue and for Marvin to bring you back."  Cocker stated that the idea for this came from Marvin.  In reply, Carrascal told Manning and Cocker her answer was no:  "I never, ever said that Valeria was a man; I am innocent."  In reply, both Manning and Cocker said "we know you didn't."  After Marvin Turpin and Hayden Nedd joined the meeting, Marvin asked Wanna if she had spoken with Carrascal about "pleading guilty," to which Wanna replied to Marvin:  "No, she doesn't want to."  At this point, Carrascal also stated that she had in fact refused because she did not do what she was accused of, and had also provided the names of people she

had overheard talking about that subject, adding: "all of these people are supposed to be suspended, not me; I am innocent of saying Xavier is a man." In reply, Marvin stated: "unfortunately, she [Xavier] picked your name only; sorry, Martha." Marvin added: "Martha, if you do not blame yourself, I have to support Adrienne and Hayden [both fellow black management officials]", with no further explanation or elaboration as to why, much less on what basis.

38.     On or about September 3 and 4, 2019, Carrascal had one or more conversations with one or more co-workers, at DCA, who told Carrascal that Xavier had been going around the workplace on September 3 and 4, 2019, telling coworkers that Carrascal had been fired.

39.     On September 4, 2019, a little before 10:00 a.m., Cindy Thayer, of the union, called Carrascal on the phone, and said "Hi Martha; I just talked to Marvin Turpin. He doesn't want to fire you, to be ready, maybe in a couple days, you will return to work." Carrascal replied: "Thank you, Cindy, but this is wrong information" Cindy stated "Why? I just talked to Marvin." In reply, Carrascal explained that she had been getting calls from co-workers both yesterday and today, stating that Xavier was going around saying Carrascal had been fired. Cindy closed the conversation with: "I will call you back."

40.     Later that same day, September 4, 2019, Carrascal was called into a 5:30 p.m. meeting at the airport, to meet with Hayden Nedd, the head of American's operations at DCA. Prior to going to the meeting, Carrascal phoned Cindy Thayer, the union representative, to seek representation and/or let her know this was happening, and this time around Cindy stated: "Don't worry," and to just go to this meeting to "process

regular papers."

41.     The meeting was from 5:30 p.m. to 9:45 p.m., and after a lot of the same questions and denials regarding people discussing Xavier being a man, and Nedd falsely asserting to Carrascal that she had never provided names of other employees who had allegedly been involved in said behaviors, and more false accusations of Carrascal, and infamy in general, Carrascal received a termination letter.

42.     Later that night, Carrascal called Cindy Thayer back, and related what happened, and she said "Sorry, Martha; I was told different, sorry."

43.     Upon information and belief, on or about September 3, 2019, in the afternoon, and unbeknownst to Carrascal at the time of the September 4, 2019 meeting, Xavier had already been going around telling coworkers at DCA:  "I am the winner; she [referring to Carrascal] is going to be fired."

44.     Carrascal neither initiated, nor perpetuated, any rumors about the biological sex, or gender, or gender identification, of the new employee, and other coworkers of hers, each not of  of Hispanic or Latina background, discussed this subject, and as to each, this fact was made known to American; however, none was similarly disciplined, much less discharged, as Carrascal was.

45.     In singling out plaintiff for this accusation of coworker harassment, in the form of spreading or perpetuating rumors, Xavier, and in turn American, not only arbitrarily elevated the word Xavier over that of Carrascal, but also incorrectly relied upon stereotypical notions harbored by Xavier and others, in *only* complaining about Carrascal [about comments that involved several different others, not Hispanic], and American Airlines, in apparently not investigating or disciplining such behaviors as to

others, that Carrascal must somehow be *solely* responsible for such comments [even though they had been told, and knew otherwise] because racially Hispanic or Latina people, including Carrascal, are stereotypically assumed to be somehow all Catholics, or uncivilized "indios" with an anachronistic, barbaric, crude, and rigid and traditional in their thoughts and views regarding gender, gender roles, as the same relate to issues of biological sex.  In short, Carrascal was made a "scapegoat" of Xavier's apparent complaint, as a direct result of Carrascal's race.

46.    At all relevant times referenced herein, all agents and employees of defendant were acting within the scope of said agent/s' actual and/or apparent authority on behalf of the defendant.

47.    Upon information and belief, Carrascal's functions formerly performed for American Airlines, at Reagan National, were replaced by persons not of Latina and/or Hispanic racial and ethnic descent, in whole or in part.

48.    The alleged insufficient or impermissible work conduct in which Carrascal was alleged by defendant to have engaged in, and/or allegedly having been complained of, was either non-existent, or at the least, even if disingenuously and arbitrarily purported to be "believed" by management personnel, including Nedd, Turpin and Adrienne Joseph-Hawkins, was lesser in seriousness and gravity, to complaints and/or allegations of the same, or even dissimilar types of on-the-job misconduct, made as to non-Latina, non-Hispanic employees, of defendant, who received no disciplinary action whatsoever, lesser disciplinary action, and were not terminated.

49.    Upon information and belief, the disciplinary measures and/or criticisms and/or work treatment, if any, enforced against Carrascal's non-Latina, non-Hispanic co-

workers, if any at all, for the same or similar alleged behaviors, all made known to management, was either non-existent, and non-addressed, or if addressed, progressive in nature, and/or was much less severe than those enforced against Carrascal.

50.     By way of comparison also to the Kadijah/credit card incident, a different Hispanic employee of American, Paul, who also worked under Nedd and Turpin, also suffered a termination, also involving alleged larceny, or petit larceny facts.  According to said employee, he had found a cell phone somewhere on his way to the workstation, and had placed the cell phone in his locker, to later take to the lost and found, as he was at risk of being late at the gate, for his work.  When an apparent American pilot learned that his cell phone was missing, the pilot apparently threw an angry fit, and refused to fly the plane until his cell phone was found.  Subsequently, American officials assisted the pilot using technical means to find the phone [same or similar as "find my iPhone"], at which point security for the airport guided the pilot to Paul's locker, after which he was immediately terminated, despite his apparent explanation for this state of affairs.   Upon information and belief, Paul was immediately terminated with no further investigation, and not brought back to work.

51.     In a different work incident, this one involving a Caucasian American Airlines employee at DCA, Mary Beth, also a customer service representative working the gates, was furnished a set AirPods found at the gates, by an American supervisor, who apparently thought the said AirPods belonged to her; rather than state they were not hers, and return them, said Mary Beth accepted the AirPods, and took them home, whereupon the customer who had lost them electronically tracked the AirPods to Mary Beth's house, and reported the incident to American Airlines, after which said Mary Beth

disappeared for five months [appearing to have been suspended], and was eventually

brought back to work by management.  If Mary Beth had been Hispanic, as Carrascal is,

she would not have been permitted by American to return to work, at all, and her

separation from the workplace would have been permanent.

52.    American's decision not to take any action pursuant to, and as a result of,

Carrascal's earlier complaint of demeaning behavior, and assault, by Xavier, was and is

because Carrascal is Hispanic, and the truth or falsity of what Carrascal says, and said,

did not and does not matter to the likes of Hayden Need, Marvin Turpin, and Adrienne

Joseph-Hawkins, amongst others working for American Airlines as DCA, who elevate an

employee's racial status, over a given employee's words, deeds, and performance.

Xavier's misdeeds, as alleged by Carrascal, and in actuality, were of a much more serious

nature, involved intentionally demeaning language, as well as aggressive initiation of

*physical contact* [assault and battery] at Carrascal, and were of intentional, and

intemperate nature; yet not being Hispanic, and being African American, Xavier, as well

as other non-Hispanics in the chain of command of Hayden Nedd, Marvin Turpin and/or

Adrienne Joseph-Hawkins, remained in the employ of defendant, and were given a "pass"

by said American management personnel, whereas Carrascal was suspended and

terminated.

53.    Defendant  purported to pin or accuse Carrascal of "starting the rumor"

about Xavier "being a man" as a direct result of Carrascal's race, and blamed alleged

work problems or issues of unknown origin, and also imposed requirements and

disciplinary standards upon Carrascal, not imposed upon similarly situated, non-Latina

employees, and otherwise singled Carrascal out for disparate discipline,  based not only

on stereotypical notions of Latina persons, but also in a predatory fashion, due to the [relatively speaking] demure and quiet nature of these Hispanic employees, and also upon alleged behaviors or errors which were not only untrue [in Carrascal's situation] but which, even if purportedly believed to be true, were much less serious in nature than those tolerated by the defendant, as to non-Hispanic coworkers of Carrascal.

54.     As a direct and proximate result of the Defendants' unlawful actions and termination described above and below, your plaintiff has suffered loss underpayment of wages, and lost wages, in the approximate aggregate amount, to date, of approximately $148,000, and other economic damages consequential to the loss of income, including reduction in standard of living, loss of savings, interest and/or debt-related costs, and loss of the apartment Carrascal had been renting before these events, and these damages are continuing in nature.

55.     As a direct and proximate result of Defendants' unlawful actions and termination described above and below, your plaintiff has also suffered a loss of the reasonable value of health insurance benefits, and a loss of the reasonable value of travel pass privileges accorded to employees and retirees of American Airlines.

56.     As a direct and proximate result of defendant's  unlawful actions described above and below, plaintiff has also suffered lack of sleep, loss of health, inability to concentrate,  and has otherwise sustained emotional pain and suffering, as well as worry, mental anguish, embarrassment, and guilt associated with said separation, attorney's fees, and resultant financial and personal hardships, as well as expenses in attempt to find work, and continues to suffer these in amounts continuing to accrue, in an amount to be more particularly stated at trial.

57.     The defendant's acts and practices described herein were intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected civil rights within the meaning of § 102(b) of the Civil Rights Restoration Act of 1991.

58.     The above-referenced acts and omissions of defendant's supervisory personnel, as to your plaintiff, were and are violative of 42 U.S.C. § 1981(a), which prohibits discrimination in the making, enforcement, performance, and termination of, as well as the enjoyment of all benefits, terms and conditions of, a contractual relationship.

59.     By their acts and omissions referenced above, Defendant intentionally deprived Carrascal of equal employment opportunities, suspended her, and terminated her employment, and otherwise adversely affected her contract status as an employee, in violation of 42 U.S.C. § 1981, proximately causing the economic and non-economic damages referenced above.

60.     Were it not for Carrascal's race, Hispanic, and attendant treatment from the above-referenced members of Defendant's management, Carrascal would continue to be employed by American, at DCA, to this day.

61.     On July 16, 2021, Carrascal timely filed her initial Complaint, containing the claim pleaded herein, in the Circuit Court of Arlington County, Virginia, and after timely service of the same, Defendant American removed the said matter, and Complaint, to this Court, and this Amended Complaint arises out of the same, and/or similar, transactional and other facts, as are alleged and pleaded in Plaintiff's said original Complaint.

<u>Prayer for Relief</u>

WHEREFORE, your plaintiff prays that this Court enter a judgment against the defendant, containing the following elements of relief:

(a)      an appropriate prohibitory injunction restraining the defendant from continuing to employ procedures and methods of administration and personnel management, as are unlawful as alleged herein, as to your plaintiff and any others similarly situated, which deprive, or have the effect of depriving, persons of Latin American racial and ethnic descent, of their protected rights to equal terms of contracting, and/or procedures and treatment attendant to cessation and/or termination of such contacts, under 42 U.S.C. § 1981, as amended; and

(b)      award of a money judgment for Martha Carrascal against defendant,  in a sum of money equal to the monetary value of all wages and benefits of employment lost, both past and future, on account of her mistreatment by, and wrongful discharge from, defendants, less any interim earnings or amounts which could be earned, or were earned, in suitable employment, with reasonable diligence, in mitigation of said damages, said overall amount to be subject to proof at trial, in an estimated overall amount of two hundred thousand dollars ($200,000.00)(together with pre and post-judgment interest thereon at the Virginia legal rate of 6% per annum); and

(c)      award of a money judgment against defendants, representing any and all actual monetary losses, including, sustained by the plaintiff, and recoverable economic losses incurred, directly or indirectly, and consequential to defendant's above-referenced unlawful discrimination against, and termination of, the plaintiff; and

(d)      award to Plaintiff of a money judgment against defendant, on account of

compensatory damages, pain, suffering and mental anguish proximally caused by

defendant's' actions described above, in the amount of  FIVE HUNDRED THOUSAND

DOLLARS ($500,000.00); and

(e)      awarding against the Defendant, punitive and exemplary damages, as

impelled by the factual circumstance; and

(f)  awarding, pursuant to 42 U.S.C. §§ 1981 and 1988(b), plaintiff's reasonable

attorney fees, expert witness fees and costs, and other litigation-related costs incurred in

prosecution hereof; and

(g) awarding such other and further relief as is appropriate to the premises of law,

equity and the facts of this case.

<u>Jury Demand</u>

Your plaintiff hereby demands trial by jury as to all claims above for which a jury

trial is available at law.

Respectfully submitted,

MARTHA CARRASCAL


By:  _____/s/ Christopher R. Rau_____
Christopher R. Rau (VSB No. 34135)
LAW OFFICES OF CHRISTOPHER R. RAU
200 Little Falls Street, Suite 501
Falls Church, VA  22046
(703) 536-1660 – Telephone
crrau@aol.com – E-Mail
*Counsel for Plaintiff Martha Carrascal*


Dated:  September 25, 2022

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 25th day of September, 2022, I filed the foregoing

21

Amended Compliant, with the Clerk of Court, using the CM/ECF system, which will generate a Notice of Electronic filing (NEF), and forward the same, together with a copy hereof, to the following:

Theresa M. Connolly, Esq.
FISHER & PHILLIPS, LLP
8200 Greensboro Drive, Suite 900
McLean, VA  22102
tconnolly@fisherphillips.com – E-Mail

Daniel E. Farrington, Esq.
Lauren G. Goetzl, Esq.
FISHER & PHILLIPS, LLP
7501 Wisconsin Avenue, Suite 1220W
Bethesda, MD  20814
dfarrington@fisherphillips.com – E-Mail
lgoetzl@fisherphillips.com – E-Mail

       /s/ Christopher R. Rau
Christopher R. Rau (VSB No. 31435)
Attorney for Plaintiff Martha Carrascal
LAW OFFICES OF CHRISTOPHER R. RAU
200 Little Falls Street, Suite 501
Falls Church, VA  22046
(703) 536-1660 – Telephone
CRRAU@AOL.COM – E-Mail